UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF AMERICA, N.A., AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP,<br><br>Plaintiff,<br><br>v.<br><br>FIDELITY NATIONAL TITLE GROUP, INC.; CHICAGO TITLE INSURANCE COMPANY; CHICAGO TITLE OF NEVADA, INC.; FIDELITY NATIONAL TITLE AGENCY OF NEVADA, INC.; TICOR TITLE OF NEVADA, INC.; DOE INDIVIDUALS I through X; and ROE CORPORATIONS XI through XX, inclusive,<br><br>Defendants. | Case No. 2:21-cv-00353-KJD-NJK<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** |

Before the Court are Plaintiff's Motion to Remand (ECF #7) and Motion for Attorney Fees (ECF #8). Defendant responded in opposition (ECF #24) to which Plaintiff replied (ECF #25).

I.      Background

On April 23, 2021, the parties stipulated to stay this action pending the appeal of a similar case. (ECF #12). The Ninth Circuit issued its ruling on the appeal on November 5, 2021. Wells Fargo Bank, N.A. v. Fidelity Nat'l Title Ins. Co., No. 19-17332, 2021 WL 5150044 (9th Cir. Nov. 5, 2021). The parties have not requested that the stay be lifted but have filed their response and reply to the instant motion after the Ninth Circuit's decision. As such, the Court lifts the stay to rule on the motion. Dependable Highway Exp., Inc. v. Navigators Ins. Co., 498 F.3d 1059, 1066 (9th Cir. 2007) ("[A] district court possesses the inherent power to control its docket and promote efficient use of judicial resources.").

1        This is a breach of contract and insurance bad faith claim. (ECF #7, at 2). Plaintiff Bank

2   of America, N.A. as successor by merger to BAC Home Loans Servicing, LP ("BANA") filed

3   the action in the Eighth Judicial District Court of Nevada on March 1, 2021. (ECF #1-1, at 59).

4   That same day, Defendant Chicago Title Insurance Company ("Chicago Title") removed the

5   action to federal court. (ECF #1, at 5). Chicago Title removed the action based on diversity

6   jurisdiction. Id. at 2. Chicago Title is a Florida corporation with its principal place of business in

7   Florida; Fidelity National Title Group ("Fidelity") is alleged to be a Delaware corporation with

8   its principal place of business in Florida; Chicago Title of Nevada ("Chicago Nevada"), Fidelity

9   National Title Agency of Nevada ("Fidelity Nevada"), and Ticor Title of Nevada ("Ticor

10  Nevada") are all Nevada corporations with their principal place of business in Nevada. Id.

11  BANA is believed to have its principal place of business in North Carolina. Id. at 3.

12        BANA is the beneficiary of several deeds of trust encumbering real property throughout

13  Nevada. (ECF #7, at 3). Each of the properties was foreclosed on by the homeowners'

14  association ("HOA") and sold to a third party. Id. BANA alleges that it, or its predecessor,

15  entered into contractual relationships with Chicago Title and either Chicago Nevada, Fidelity

16  Nevada, or Ticor Nevada to insure the Deed of Trust in superior position to competing liens,

17  including the HOA's liens. Id. BANA then submitted claims to Chicago Title under the

18  insurance policy, but the claims were denied. Id. at 4. This led to a multitude of lawsuits being

19  filed by both banks and buyers of property at the HOA foreclosure sales. Id. Now, BANA seeks

20  to recover its remaining losses and other damages. Id.

21        There are many similar actions currently being litigated in Nevada and this issue of snap

22  removal has become a common question. To date, six judges in the District of Nevada have ruled

23  on the issue.[1] Five, including this Court, have found that snap removal is improper and remanded

---

[1] See Deutsche Bank Nat'l Tr. Co. as Tr. for Am. Home Mortg. Inv. Tr. 2007-1 v. Old Republic Title Ins. Grp., Inc., 532 F.Supp.3d 1004, 1010–11 n.3 (D. Nev. 2021); U.S. Bank Tr. Nat'l Ass'n v. Fidelity Nat'l Title Grp., Inc., No 2:20-cv-02068-JCM-VCF, 2021 WL 223384 (D. Nev. Jan. 22, 2021); HSBC Bank USA, Nat'l Ass'n as Tr. for Certificateholders of ACE Secs. Corp. Home Equity Loan Tr., Series 2007-MW1, Asset-Backed Pass-through Certificates v. Fidelity Nat'l Title Grp., Inc., 508 F.Supp.3d 781 (D. Nev. 2020); Wells Fargo Bank, N.A. as Tr. of Holders of Harborview Mortg. Loan Tr. Mort. Loan Pass-through Certificates, Series 2006-12 v. Fidelity Nat'l Title Grp., Inc., No. 2:20-cv-01849-APG-NJK, 2020 WL 7388621 (D. Nev. Dec. 15, 2020); Deutsche Bank Nat'l Tr. Co. v. Fidelity Nat'l Title Grp., Inc., No. 2:20-cv-01606-APG-BNW, 2020 WL 7360680 (D. Nev. Dec. 15, 2020); Sparks v. Mamer, No. 2:20-cv-0661-KJD-VCF, 2020 WL 6820796 (D. Nev. Nov. 20, 2020).

1  the cases to state court, while one judge has denied remand, ruling that the snap removal is an

2  acceptable practice according to the plain language of the statute.[2] The Court joins the majority

3  of the judges in the District and finds that Defendant's snap removal prior to service was

4  improper and the forum defendant rule requires a remand to state court.

5        II.      Legal Standard

6        Federal courts are courts of limited jurisdiction. See U.S. CONST. art. III, § 2, cl. 1; Owen

7  Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). Accordingly, there is a strong

8  presumption against removal. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). A

9  defendant may remove any civil action from state court when the federal district court has

10 original jurisdiction. 28 U.S.C. § 1441(a). A diversity case cannot be removed if "any of the

11 parties in interest properly joined and served as defendants is a citizen of the State in which such

12 action is brought." Id. at § 1441(b)(2). Courts strictly construe the removal statute against

13 removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to right of removal

14 in the first instance." Gaus, 980 F.2d at 566. The removing party bears the burden of establishing

15 federal jurisdiction. California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir.

16 2007).

17       Removal based on diversity jurisdiction requires complete diversity, meaning "the

18 citizenship of each plaintiff is diverse from the citizenship of each defendant." Caterpillar, Inc. v.

19 Lewis, 519 U.S. 61, 68 (1996). However, when "determining whether there is complete

20 diversity, district courts may disregard the citizenship of a non-diverse defendant who has been

21 fraudulently joined." Grancare, LLC v. Thrower by & through Mills, 889 F.3d 543, 548 (9th Cir.

22 2018) (citing Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146, 152 (1914)).

23       III.     Analysis

24       Chicago Title argues that the plain language of the removal statute permits removal of

25 this action. Chicago Title focuses on the language of the statute, which states that diversity

26 actions may not be removed "if any of the parties in interest **properly joined and served** as

27

28       [2] See U.S. Bank, N.A. as Tr. to Wachovia Bank Nat'l Assoc. v. Fidelity Nat'l Title Grp., Inc., No. 2:21-cv-00339-GMN-VCF (D. Nev. Nov. 29, 2021).

1    defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2)

2    (emphasis added). This is known as the forum defendant rule. Chicago Title argues that because

3    it removed the action prior to any defendant being served, the forum defendant rule does not

4    apply. Additionally, Chicago Title argues that BANA fraudulently joined twenty-two claim

5    denials to defeat diversity. According to Chicago Title, BANA should have filed separate

6    lawsuits for each of the denied claims. If it had, then eight of the claims would not have a local

7    defendant and would defeat removal. Chicago Title also argues that federal question jurisdiction

8    exists because BANA is not the true party in interest. It argues that BANA does not have

9    standing to sue because BANA is merely the servicer of the loans and Freddie Mac is the

10   insured. With Freddie Mac as the actual party in interest, federal question jurisdiction exists, and

11   the diversity question is irrelevant. BANA disagrees with each argument, arguing that it is an

12   insured, that the joinder rules encourage judicial economy rather than splitting up the twenty-two

13   denied claims into separate lawsuits, and that snap removal promotes gamesmanship by

14   defendants and undermines the purpose of the forum defendant rule.

15              A.   The Forum Defendants are Properly Joined

16        Chicago Title argues that BANA fraudulently joined twenty-two separate claims to defeat

17   diversity. It asks the Court to retain jurisdiction of eight of the claims and remand the other 14

18   back to state court. In general, a "party asserting a claim, counterclaim, crossclaim, or third-party

19   claim may join, as independent or alternative claims, as many claims as it has against an

20   opposing party." FED. R. CIV. P. 18(a). Parties may be permissively joined as defendants if "any

21   right to relief is asserted against them jointly, severally, or in the alternative with respect to or

22   arising out of the same transaction, occurrence, or series of transactions or occurrences; and any

23   question of law or fact common to all defendants will arise in the action." Id. at 20(a)(2). If the

24   alleged fraudulent claims do not arise out of the same transaction or occurrence and do not

25   contain a common question of law or fact, then they cannot be permissively joined.

26        This action focuses on denied claims that involve multiple properties and multiple

27   defendants. The Ninth Circuit has indicated that such claims can arise out of the same transaction

28   or occurrence and contain a common question of law or fact. In a case involving the purchase of

1  properties in HOA foreclosure sales, it stated that "the purchase of nine Nevada properties in

2  homeowners' association foreclosure sales by three interconnected real estate development

3  corporations constituted a 'series of transactions or occurrences.'" <u>Fed. Housing Fin. Agency v.</u>

4  <u>Las Vegas Dev. Grp., LLC</u>, No. 20-15658, 2021 WL 5359593, at *1 (9th Cir. Nov. 17, 2021).

5  The real estate development companies were interconnected, which likely weighed in favor of

6  the court's finding that they constituted a series of transactions or occurrences. Here, there are

7  multiple claims for multiple properties that were denied. There is only one plaintiff, and all the

8  defendants are interconnected, as each claim was printed on the same form and the defendants

9  are alleged to be controlled by Fidelity. The consistent denial of the claims that were executed on

10 the same forms is sufficient to constitute a series of transactions or occurrences.

11       <u>Fed. Housing</u> also contained a common question of law and fact, including whether a

12 statute preserved the plaintiff's property interests after the foreclosure sales. <u>Id.</u> Litigating the

13 claims together would answer that question for all the defendants. BANA argues that there are

14 questions of law or fact common to all defendants that would be answered in litigating these

15 claims together. Those questions include whether the forms used by each defendant provided

16 coverage, whether Fidelity instructed the other defendants to represent to potential clients that

17 the forms provided coverage, and whether Fidelity adopted a coverage position that was at odds

18 with its manuals to wrongfully deny all the claims. (ECF #25, at 12). Because the defendants are

19 interconnected, controlled by Fidelity, and used the same forms, the Court agrees that there exist

20 questions common to all defendants.

21       Because the claims satisfy Rule 20(a), they were permissively joined and BANA may

22 litigate the actions collectively. Additionally, the Court sees no reason to retain jurisdiction of

23 eight of the claims. Such a ruling would discourage judicial economy and require multiple

24 lawsuits. <u>Cuprite Mine Partners, LLC v. Anderson</u>, 809 F.3d 548, 552 (9th Cir. 2015)

25 ("Permissive joinder is to be liberally construed to promote the expeditious determination of

26 disputes, and to prevent multiple lawsuits.").

27              B.  Federal Question Jurisdiction Does Not Exist

28       Chicago Title argues that federal question jurisdiction exists because Freddie Mac is the

1   real party in interest and district courts have original jurisdiction over "all civil actions to which

2   [Freddie Mac] is a party." 12 U.S.C. § 1452(f). According to Chicago Title, BANA is only the

3   servicer of at least four of the loans mentioned in the suit. The owner of the loans is Freddie

4   Mac. As such, Freddie Mac, not BANA, is the real party in interest as to the claims on the four

5   loans that Freddie Mac owns, which gives the court federal question jurisdiction and makes the

6   diversity issue irrelevant. Chicago Title recognizes that the Supreme Court has demonstrated that

7   district courts need not look beyond the four corners of the complaint to assess whether it has

8   jurisdiction. See Lincoln Property Co. v. Roach, 546 U.S. 81, 93 (2005). Instead, Chicago Title

9   argues that BANA does not have standing to bring the claims for the loans owned by Freddie

10  Mac. Chicago Title adds that "BANA's lack of standing is readily discernible from the facts in

11  the Complaint." (ECF #24, at 18). The Court disagrees.

12          BANA alleges in its complaint that it is the beneficiary of each Deed of Trust and thus

13  the insured under those policies. Federal question jurisdiction "exists only when a federal

14  question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc.

15  v. Williams, 482 U.S. 386, 392 (1987). The complaint does not clearly establish federal question

16  jurisdiction. The Court will adhere to the Supreme Court's guidance and not look beyond the

17  four corners of the complaint to determine whether federal question jurisdiction exists. If

18  Chicago Title wishes to challenge BANA's standing to bring a cause of action on the loans it

19  alleges BANA merely services, it may do so in a motion to dismiss.

20                      C.   Chicago Title's Snap Removal was Improper

21          Chicago Title argues that its snap removal is a valid means of avoiding the forum

22  defendant rule. It urges the Court to follow the appellate courts that have reviewed § 1441(b)(2)

23  and found the statute allows the tactic. BANA argues that allowing snap removal would

24  contravene the statute's purpose. Both sides acknowledge that the Ninth Circuit has yet to review

25  the specific question. The Courts in this District that have reached the question have almost

26  uniformly held that 'snap removal' is improper under 28 U.S.C. § 1441(b)(2). Deutsche Bank

27  Nat'l Tr. Co. as Tr. for Am. Home Mortg. Inv. Tr. 2007-1 v. Old Republic Title Ins. Grp., Inc.,

28

1    532 F.Supp.3d 1004, 1010–11 n.3 (D. Nev. 2021) (collecting cases).[3]

2           When interpreting a statute, the Court looks first to the plain language of the statute to

3    discern congressional intent. See, e.g., Zuress v. Donley, 606 F.3d 1249, 1252–53 (9th Cir.

4    2010). "It is well established that when the statute's language is plain, the sole function of the

5    courts—at least where the disposition required by the text is not absurd—is to enforce it

6    according to its terms." Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004) (quoting Hartford

7    Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6, (2000)) (internal quotation

8    marks omitted). The court "may not adopt a plain language interpretation of a statutory provision

9    that directly undercuts the clear purpose of the statute." Albertson's, Inc. v. C.I.R, 42 F.3d 537,

10   545 (9th Cir. 1994).

11          Some appellate courts have determined that the "properly joined and served" language in

12   § 1441(b)(2) renders the statue clear and unambiguous, allowing snap removal before any

13   defendant is served. However, not all courts agree. Many judges in the District reason that the

14   word "any" in "any of the parties in interest properly joined and served" necessarily means that

15   the statute assumes one party has been served. 28 U.S.C. § 1441(b)(2) See Wells Fargo Bank,

16   N.A. v. Old Republic Title Ins. Grp., Inc., No. 2:20-cv-00461-JCM-NJK, 2020 WL 5898779, at

17   *2 (D. Nev. Oct. 5, 2020). The fact that reasonable jurists differ on the statute's language

18   evidences its ambiguity. Whether the language is ambiguous or not, Chicago Title's

19   interpretation would render the forum defendant rule impotent.

20          The purpose of the removal power is to "protect non-forum litigants from possible state

21   court bias in favor of forum-state litigants." Gentile v. Biogen Idec, Inc., 934 F.Supp.2d 313, 319

22   (D. Mass. Feb. 21, 2013). Forum defendants are not at such a risk and their presence

23   "presumably mitigates concerns of state-court bias toward the plaintiff." HSBC Bank, 508

24   F.Supp.3d at 789. The language regarding a defendant who is "properly joined and served" was

25   added to the removal statute in 1948. Gentile, 934 F.Supp.2d at 319. The Gentile court's review

26   of Supreme Court precedent at that time "suggests the purpose of the 'properly joined and

27

28          [3] One case disagrees with the other courts in the District and ruled that remand was improper. U.S. Bank,
     N.A. as Tr. to Wachovia Bank Nat'l Assoc. v. Fidelity Nat'l Title Grp., Inc., No. 2:21-cv-00339-GMN-VCF (D. Nev.
     Nov. 29, 2021).

1   served' language was to prevent plaintiffs from defeating removal through improper joinder of a

2   forum defendant," not to give defendants a loophole to avoid the forum defendant rule. Id. at

3   319–20. Snap removal prior to service does not aid in preventing the defeat of removal through

4   improper joinder.

5           The Court finds that adopting Chicago Title's interpretation of the statute would

6   "undercut the clear purpose" of the forum defendant rule and encourage defendants to hijack a

7   plaintiff's choice of forum by racing to remove prior to service. Albertson's, Inc., 42 F.3d at 545.

8   The Court will not apply the statute in a way that would "eviscerate the purpose of the forum

9   defendant rule." Mass. Mut. Life Ins. Co. v. Mozilo, 2012 WL 11047336, *2 (C.D. Cal. June 28,

10  2012) (citation omitted). By remanding to state court, the Court "provides some measure of

11  protection for a plaintiff's choice of forum" while interpreting the statute in favor of remand, as

12  required. HSBC Bank, 508 F.Supp.3d at 789 (quoting Gentile, 934 F.Supp.2d at 319); Gaus, 980

13  F.2d at 566.

14                          D.  BANA is not Entitled to Attorney's Fees

15          28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of

16  just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

17  The decision to award attorney fees is left to the discretion of the court. Martin v. Franklin

18  Capital Corp., 546 U.S. 132, 139 (2005). "[A]bsent unusual circumstances, courts may award

19  attorney's fees under § 1447(c) only [when] the removing party lacked an objectively reasonable

20  basis for seeking removal." Martin, 546 U.S. at 136. Therefore, courts in the Ninth Circuit assess

21  the clarity of the relevant law to determine whether there was an objectively reasonable basis for

22  removal. See Lussier v. Dollar Tree Stores, Inc., 518 F.3d 1062, 1066 (9th Cir. 2008) ("[T]he test

23  is whether the relevant law clearly foreclosed the defendant's basis of removal.").

24          BANA argues that Chicago Title has engaged in jurisdictional gamesmanship removing

25  every title insurance case immediately after it is filed. BANA highlights the consensus among

26  the District's judges that the tactic contorts the meaning and purpose of the removal statue.

27  However, the propriety of snap removal is a contested issue with supporting caselaw that the

28  Ninth Circuit has not ruled on. Because Chicago Title had an objectively reasonable basis for

1 | removal, the Court declines to award BANA the fees and costs it incurred because of the

2 | removal.

3 |       IV.    Conclusion

4 |       Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Remand (ECF #7) is

5 | **GRANTED.**

6 |       IT IS FURTHER ORDERED that Plaintiff's Motion for Attorney Fees (ECF #8) is

7 | **DENIED**.

8 | Dated this 28th day of March, 2022.

9 |

10 |            Kent J. Dawson

11 |            United States District Judge